**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

JAMES MICHAEL FLIPPO,

        Petitioner,

v.                                    CIVIL ACTION NO.  5:05-cv-00765

THOMAS MCBRIDE, Warden,

        Respondent.

**MEMORANDUM OPINION**

Pending before the Court are Petitioner James Michael Flippo's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 [Docket 2] and Respondent Thomas McBrides's Motion to Dismiss and Motion for Summary Judgment [Docket 23].

*I.  BACKGROUND AND PROCEDURAL HISTORY*

Petitioner seeks a writ of hapeas corpus for relief from a sentence of a life term of imprisonment without parole that resulted from a conviction in the Circuit Court of Fayette County, West Virginia, for the first-degree murder of his wife, Cheryl Flippo.  On April 29, 1996, Petitioner and Mrs. Flippo rented a cabin at Babcock State Park in Fayette County, West Virginia.  At 2:11 a.m. on April 30, 1996, Petitioner called 911 from a payphone and reported that he and his wife had been attacked by a masked intruder.  The 911 operator kept Petitioner on the phone until Deputy C. Bryant of the Fayette County Sheriff's Department arrived.  Deputy Bryant found Petitioner wearing

only his underwear and bleeding minimally from his right leg.[1]  Deputy Bryant and Petitioner proceeded to the cabin where they found the body of Mrs. Flippo, who had suffered a fatal head wound.[2]  Thereafter, Deputy Bryant secured the crime scene.

Petitioner was transported to Plateau Medical Center where he received treatment for a half-dollar sized bruise on his forehead, a bruise the size of a quarter on the back of his head, and scratches on his legs.  Following the treatment, Petitioner went to the Fayette County Sheriff's Department where he voluntarily gave a statement to Detective S. Kessler.  Petitioner claimed that after he and his wife had gone to bed, a masked intruder knocked him unconscious with a piece of firewood.  Petitioner reported that he regained consciousness and found the intruder cutting his legs with a knife.  Petitioner claimed the intruder then struck him on the forehead, knocking him unconscious for the second time.  Petitioner allegedly regained consciousness, found his wife in a pool of blood, determined that her heart was beating,[3] and left the cabin to find a pay phone.

Shortly after Petitioner gave his statement, Detective G. Burke, who was investigating the crime scene, called the police department to report that the there was no sign of forced entry in the cabin and that the crime scene appeared to be staged.  Based on that report, Petitioner became a

---

[1] When Deputy Bryant first spoke with Petitioner, Petitioner advised that he and his wife had driven a green Cadillac to the park, which he reported was stolen.  However, in a subsequent statement voluntarily made to the police, Petitioner admitted that he had borrowed a red Chevrolet Camaro from his friend Joel Boggess, left his Cadillac with Mr. Boggess, and traveled to Babcock State Park with his wife.  The Cadillac was found with Mr. Boggess and was determined not to have been stolen.

[2] Deputy Bryan noted that despite the rain, no footprints were around or inside the cabin, indicating that no one had entered the cabin that night.

[3] Petitioner's testimony was inconsistent with a statement made to the 911 operator to whom he reported that he had not tried to determine if Mrs. Flippo's heart was beating before leaving the cabin.

suspect in the murder investigation. As such, Petitioner was examined by Dr. Irvin Sopher, the Chief Medical Examiner for the State of West Virginia, on May 2, 1996.

On May 3, 1996, the police arrested Petitioner and charged him with the murder of his wife. Prior to trial, Petitioner moved to exclude testimony regarding an alleged homosexual relationship between Petitioner and Mr. Boggess. The trial court granted the motion but allowed evidence showing that Petitioner's relationship with Mr. Boggess had strained his marriage. At trial, the prosecution elicited testimony from Mr. Boggess regarding several overnight trips that he had taken with Petitioner. On cross-examination, the defense attorney asked a series of questions that resulted in Mr. Boggess testifying that he and Petitioner were both heterosexual and had not engaged in a homosexual relationship.

Also, at trial, Dr. Sopher testified that the based on the depth and direction of the scratches on Petitioner's legs, the scratches were clearly self-inflicted. In addition, Dr. Sopher testified that when he examined Petitioner, "there was no injury whatsoever, no swelling of the scalp and no evidence of any impact at all [to Petitioner's head]. So, of course, there was nothing to substantiate an impact that would cause unconsciousness." (Docket 25, Ex. 23 at 45.)

The Prosecution also called Frank Ennis, an insurance agent and part owner of Pleasants County Insurance, to testify at trial. Mr. Ennis testified that on April 1, 1996, his company issued a $100,000 life insurance policy to Mrs. Flippo, naming Petitioner as the sole beneficiary, which was in effect on the date of her death. In addition to the testimony of Mr. Boggess, Dr. Sopher, and Mr. Ennis, the prosecution presented the testimony of many other witnesses as well as physical evidence in its case-in-chief.

On October 23, 1997, the jury returned a verdict against Petitioner, and on November 3, 1997, the trial court sentenced Petitioner to life in prison without mercy. On February 17, 2004, Petitioner filed a petition for a writ of habeas corpus in the Circuit Court of Fayette County, which was denied on December 7, 2004.[4] Petitioner appealed to the Supreme Court of Appeals of West Virginia, which declined to hear the appeal.

Petitioner filed the instant action on September 15, 2005. By Standing Order entered on August 1, 2006, and filed in this case on May 29, 2007, this action was referred to United States Magistrate Judge R. Clarke VanDervort for submission of proposed findings and a recommendation (PF&R). Magistrate Judge VanDervort entered a PF&R [Docket 29] on November 2, 2007, recommending that the Court deny Petitioner's Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 [Docket 2], grant Respondent's Motion to Dismiss and Motion for Summary Judgment [Docket 23], and remove this matter from the Court's docket. Objections to Magistrate Judge VanDervort's PF&R were due by November 20, 2007, pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b). Petitioner timely filed objections to the PF&R on November 13, 2007. This matter is now ripe for the Court's consideration.

---

[4] Prior to filing for a writ of habeas corpus, Petitioner appealed his conviction to the Supreme Court of Appeals of West Virginia, which summarily denied his appeal on January 13, 1999. Petitioner appealed the denial to the Supreme Court of the United States, which reversed and remanded the case based on a Fourth Amendment issue regarding photographs found at the scene of the crime. On remand, the trial court denied Petitioner's motion to suppress and for a new trial, and Petitioner again appealed to the Supreme Court of Appeals of West Virginia. The West Virginia Supreme Court found the admission of the photographs to be harmless error and affirmed Petitioner's conviction.

## II. STANDARD OF REVIEW

This Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made," and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1)(C). However, the Court is not required to review the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed. *Thomas v. Arn*, 474 U.S. 140, 150 (1985). In addition, this Court need not conduct a de novo review when a party "makes general and conclusory objections that do not direct the Court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982).

A federal court should not grant habeas relief on any claim adjudicated on the merits in state court unless the adjudication resulted in a decision that (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

> Normally, the admissibility of evidence [and] the sufficiency of evidence . . . in state trials are matters of state law and procedure not involving federal constitutional issues. It is only in circumstances impugning fundamental fairness or infringing specific constitutional protections that a federal question is presented. The role of a federal habeas corpus petition is not to serve as an additional appeal.

*Grundler v. North Carolina*, 283 F.2d 798, 802 (4th Cir. 1960).[5]

---

[5] When reviewing portions of the PF&R de novo, the Court will consider the fact that Petitioner was acting pro se prior to August 29, 2006, and any filings prior to that time will be accorded liberal construction. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978).

### III. OBJECTIONS TO THE PF&R

Petitioner makes four objections to the PF&R, and each is addressed below.

  A.  *Fundamental Fairness Objection*

Petitioner objects to the magistrate judge's finding that the alleged introduction of "false junk science" did not violate his federal due process rights. Petitioner argues that the testimony of Dr. Sopher introduced at trial was objectively false because a "naked eye" examination of the bruises on his head was an insufficient basis to negate the possibility that Petitioner had lost consciousness. Petitioner filed opposition papers that contained the statements of two doctors who opined that a physician can not conclusively determine whether a person has lost consciousness based on a cursory physical examination. The magistrate judge applied *United States v. Napue*, 393 U.S. 1024 (1969) (knowing use of perjured testimony resulted in a due process violation) and *United States v. Giglio*, 405 U.S. 150 (1972) (extension of *Napue* to knowing concealment of impeachment evidence) to determine that Dr. Sopher's testimony did not violate Petitioner's due process rights.

Petitioner objects to the magistrate judge's finding, stating that his "junk science" claim was not made pursuant to *Napue* or *Giglio*, but rather pursuant to *Snowden v. Singleterry*, 135 F.3d 732, 737 (11th Cir. 1998). Unlike *Napue* and *Giglio*, which involve the prosecution's use of perjured testimony, *Snowden* recognized a violation of due process rights if the introduction of false testimony is "fundamentally unfair."[6]

---

[6] In *Snowden*, the prosecution elicited expert testimony that 99.5 percent of all children tell the truth with regard to abuse to corroborate the testimony of a child victim. 135 F.3d at 739. The *Snowden* court found that expert testimony about the credibility of an alleged child sexual assault victim was clearly improper. *Id.* However, the court emphasized that "not every evidentiary error amounts to a denial of fundamental fairness." *Id.* at 737–738. In determining whether the defendant was denied fundamental fairness, the *Snowden* court noted that the case was based almost solely on the
(continued...)

Respondent argues that Petitioner's fundamental fairness argument is an impermissible attempt to amend the petition because Petitioner failed to present it to the West Virginia State Court. In *Anderson v. Harless*, the Supreme Court "made clear that 28 U.S.C. § 2254 requires a federal habeas petitioner to provide the state courts with a 'fair opportunity' to apply controlling legal principles to the facts bearing upon his constitutional claim. 459 U.S. 4, 6 (1982) (citing *Picard v. Connor*, 404 U.S. 270, 276–277 (1971)). "It is not enough that all the facts necessary to support the federal claim were before the state courts . . . or that a somewhat similar state-law claim was made." *Id.* "In addition, the habeas petitioner must have 'fairly presented' to the state courts the 'substance' of his federal habeas corpus claim." *Id.* The Supreme Court has "also indicated that it is not enough to make a general appeal to a constitutional guarantee as broad as due process to present the 'substance' of such a claim to a state court." *Gray v. Netherland*, 518 U.S. 152, 163 (1996).

In this case, Petitioner presented four legal arguments regarding his "junk science" claim in his Petition for Appeal in the Supreme Court of Appeals of West Virginia [Docket 2-2]. The argument that most closely resembled the substance of his fundamental fairness argument asserted the following: "Admission of Sopher's blatantly false testimony violated Rev. Flippo's rights to Due Process under both the West Virginia and United States Constitutions." (Docket 2-2 at 9.) However, as noted in *Gray*, merely alleging a denial of due process does not amount to the

---

[6](...continued)
testimony of children and that little other evidence was entered. *Id*. at 738. The court further found that due to lack of other evidence, the admission of the expert testimony rendered the trial fundamentally unfair and in violation of due process. Therefore, the court granted the petitioner's writ for habeas relief. However, the *Snowden* court cautioned that "very rarely will a state evidentiary error rise to a federal constitutional error . . . ." *Id.* at 739; *see also McCoy v. Newsome*, 953 F.2d 1252, 1265 (11th Cir. 1992) (holding that erroneously admitted evidence "is not crucial, critical and highly significant when other evidence of guilt is overwhelming.").

presentation of every claim arising under the Due Process Clause to the state court. The Court's review of the record indicates that Petitioner did not present a specific claim for denial of fundamental fairness as contemplated in *Snowden*. Therefore, because Petitioner failed to present this claim in a state habeas proceeding or on direct appeal, and absent the showing of "cause and prejudice for his failure to raise the claim in state proceedings," this argument is not properly before this Court. *See Gray*, 518 U.S. at 165.[7]

### B. *Napue/Giglio* Objection

Petitioner's second ground in his petition for writ of habeas corpus was based upon *Napue* and *Giglio*. The magistrate judge determined that to prove a violation of due process rights based on *Napue*, Petitioner needed to show that the prosecution presented Dr. Sopher's testimony *knowing it to be false*. *See Shuler v. Ozmint*, No. 06-7, 2006 WL 3611810 at *6 (4th Cir. Dec. 11, 2006). Judge VanDervort found that Petitioner made no such showing and, therefore, Judge VanDervort agreed with the state habeas ruling that Petitioner failed to present a colorable *Napue* claim. Petitioner objects to the magistrate judge's application of *Napue* and *Giglio*.

---

[7] Though the Court declines to review Petitioner's fundamental fairness argument, it notes that the instant case differs significantly from the *Snowden* case. In *Snowden*, the court found that the petitioner was denied fundamental fairness because it was clear that the admission of the expert witness's testimony was error, and little other evidence was presented at trial. Here, the admission of Dr. Sopher's testimony was not clear error, as the testimony in question was based on Dr. Sopher's opinion. In addition, the amount of evidence admitted against Petitioner at trial was overwhelming. For instance, Petitioner provided several inconsistent statements regarding the night of the murder; the deputy who was first on the crime scene found no footprints around the cabin or in the cabin thought it was raining; there was no sign of forced entry into the cabin; the investigating detective opined that the crime scene looked staged; Petitioner suffered superficial wounds while his wife suffered fatal blows to the head; and evidence indicated that the Flippo marriage was strained. Therefore, the criteria that led the *Snowden* court to find a denial of fundamental fairness are not present in the case at hand.

Petitioner claims that rather than showing the prosecution knew the testimony to be false, he need only show that the prosecution "should have known the evidence was false." (Docket 30 at 3 (citing *Boyd v. French*, 147 F.3d 319, 329 (4th Cir. 1998); *Boon v. Paderick*, 541 F.2d 447, 450 (4th Cir. 1976)).) In addition, Petitioner claims that he should be given the opportunity at a hearing to show that the testimony was so blatantly false that the prosecutor knew or should have known it was untrue.

The Court agrees with Petitioner regarding the applicable standard for a "*Napue/Giglio*" claim. *Napue* and *Giglio* are part of a series of decisions by the Supreme Court that have addressed defendants' due process right to not be convicted based on false evidence presented by the Government. Prior to *Napue*, it was "established that a conviction obtained through use of false evidence, known to be such by representatives of the State" violates due process. *Napue*, 360 U.S. at 269 (citing *Mooney v. Holohan*, 294 U.S. 103, 112 (1935)). Thereafter, the Supreme Court established that "[t]he same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected when it appears." *Id.* (citing *Alcorta v. States of Texas*, 355 U.S. 28, 78 (1957)). The *Napue* Court added, "The principle that a State may not knowingly use false evidence, including false testimony, to obtain a tainted conviction, implicit in any concept of ordered liberty, does not cease to apply merely because the false testimony goes only to the credibility of the witness." *Id.* at 270.[8] Finally, *Giglio* extended the holding in *Napue* to apply to evidence

---

[8] In *Napue*, the petitioner, who was convicted of murder, alleged in his petition for a post-conviction hearing that his conviction was acquired through the knowing use of perjured testimony. 360 U.S. at 267. Specifically, the petitioner claimed that an essential State witness had lied during cross-examination when he denied that the Assistant State's attorney had promised a recommendation for reduction of his sentence in exchange for his testimony. *Id.* at 266. Moreover, the Assistant State's Attorney had allegedly elicited the same false testimony on redirect examination. *Id.* at 268. The
(continued...)

attributable to the Government that is withheld regardless of whether trial attorney is aware of the evidence. *Giglio*, 405 U.S. at 155.[9]

In applying *Napue* and *Giglio*, the Court of Appeals for the Fourth Circuit has recognized that "[a] conviction acquired through the knowing use of perjured testimony by the Government violates due process." *United States v. Kelly*, 35 F.3d 929, 933 (4th Cir. 1994) (citing *Napue*, 360 U.S. at 269). "This is true regardless of whether the Government solicited testimony it knew *or should have known* to be false or simply allowed such testimony to pass uncorrected." *Id.* (citing *Giglio*, 405 U.S. at 153) (emphasis added); *see also Boone v. Paderick*, 541 F.2d 447 at 450 (4th Cir. 1976). However, a conviction should only be reversed "when 'there is any reasonable likelihood that the false testimony could have affected the judgment of the jury.'" *Id.*

Thus, before Petitioner's conviction could be reversed based on *Napue* and *Giglio*, the Court must determine that (1) the Government elicited or permitted testimony that it knew or should have known was false, and (2) that testimony could have affected the judgment of the jury. First, nothing in the record indicates that the Government knew or should have known that Dr. Sopher's testimony

---

[8](...continued)
Supreme Court held that the Government's knowing use of perjured testimony may have had an effect on the trial and, thus, violated due process. *Id.* at 272. Therefore, the Supreme Court reversed the petitioner's conviction. *Id.*

[9] In *Giglio*, an assistant United States attorney, who was not the trial counsel in the petitioner's case, submitted an affidavit admitting that he promised the petitioner's alleged co-conspirator that the Government would not bring charges against him in exchange for his testimony against the petitioner. *Giglio*, 405 U.S. at 151. The Supreme Court determined that "the Government's case depended almost entirely on [the witness's] testimony; without it there could have been no indictment and no evidence to carry the case to the jury." *Id.* at 154. The Court found "evidence of any understanding or agreement as to a future prosecution would be relevant to [the witness's] credibility and the jury was entitled to know of it." Therefore, the Supreme Court reversed the petitioner's conviction.

was false. The Government relied on the testimony of Dr. Sopher, a well-known forensic expert and medical examiner in West Virginia. Nothing in the record indicates that the Government had any reason to doubt Dr. Sopher's opinion. In addition, the Government had little choice but to call Dr. Sopher, regardless of what his opinions were, because he was involved in the investigation within just a few days of the crime. Moreover, the testimony provided by Dr. Sopher consisted of subjective opinions. Dr. Sopher *opined* that Petitioner's account of the events on the night of Mrs. Flippo's murder were inconsistent with the injuries Petitioner suffered.

Petitioner has provided no evidence, nor is it likely that he could provide evidence, that Dr. Sopher's testimony was false. Instead Petitioner has filed the statements of two physicians who believe that Dr. Sopher could not have conclusively determined that Petitioner did not lose consciousness based on a cursory examination. However, the physicians' opinions would, at best, only either contradict Dr. Sopher or affect the weight of Dr. Sopher's testimony. Moreover, Petitioner did not obtain these opinions until long after the trial. Therefore, they have little bearing on what the prosecution knew or should have known about Dr. Sopher's testimony at the time of the trial.

As the magistrate judge found, Dr. Sopher's medical opinion testimony did not need to be irrefutable to be admissible. Therefore, nothing in the record indicates that Dr. Sopher's testimony was false much less that the Government "knew or should have known" it was false.

Second, as discussed in footnote 7, Petitioner's conviction was based on an overwhelming amount of evidence. Thus, this case is markedly different from *Napue* and *Giglio* where the petitioners' convictions were based almost solely on the contested testimony. Therefore, even if Petitioner could show that the Government presented testimony that he knew or should have known

-11-

to be false, the Court is not convinced that the jury would have reached a different outcome absent Dr. Sopher's testimony.

Despite the application of a different standard, the Court agrees with the magistrate judge that the trial court's decision[10] was not an unreasonable application of federal law. In addition, the Court **FINDS** that a hearing would not shed light on this matter. Accordingly, Petitioner's second objection is **OVERRULED**.

### C. *Ineffective Assistance of Counsel Objection*

Petitioner claims the magistrate judge's recommendation to dismiss his ineffective assistance of counsel claim was based on a factual error. To succeed on a claim that he received ineffective assistance of counsel, a petitioner must establish two elements. First, he must show that his counsel's performance "fell below an objective standard of reasonableness." *Strickland v. Washington,* 466 U.S. 668, 687-88 (1984). Second, he must establish prejudice by showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

When assessing counsel's performance under *Strickland*'s first prong, the Supreme Court has noted that the reviewing court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. In order to prevail, a

---

[10] When considering Petitioner's state habeas claim, the trial court found that Petitioner's *Napue* claim was "wholly and utterly without any merit." (Docket 17-2 at 55.) Furthermore, the trial court found that "[f]or Dr. Sopher's trial testimony to be deemed false or a lie[,] it would have to be conclusively shown that his trial testimony was totally and wholly different from what he truthfully and actually believed at the time he so testified." (*Id*.) The trial court found that Petitioner had made no such showing. (*Id*.)

petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* Accordingly, the reviewing court must grant a "heavy measure of deference to counsel's judgments," and, in doing so, may only evaluate such performance from counsel's perspective at the time of the alleged error and in light of all the circumstances. *Id.* at 690-91; *Kimmelman v. Morrison,* 477 U.S. 365, 381 (1986). Additionally, a reviewing court generally should avoid "Monday morning quarterbacking." *Stamper v. Muncie,* 944 F.2d 170, 178 (4th Cir. 1991); *see also Strickland,* 466 U.S. at 689 ("A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight . . . .")

Here, trial counsel made a successful pre-trial motion to exclude testimony regarding an alleged homosexual relationship between Petitioner and Mr. Boggess. Though the trial court granted the motion, it permitted evidence showing the strain on Petitioner's marriage caused by Petitioner's relationship with Mr. Boggess. At trial, the prosecution questioned Mr. Boggess about several overnight trips he had taken with Petitioner. On cross-examination, Petitioner's trial counsel asked Mr. Boggess questions regarding his and Petitioner's sexual preferences and their relationship. Petitioner contends that this line of questioning amounted to ineffective assistance of counsel. However, the trial court held that "[t]he strategic and tactical, trial decision of Petitioner's trial counsel to confront, head on, any thought in the jury's mind as to the existence of any improper relationship between [Petitioner] and [Mr.] Boggess, was not, under the totality of the evidence existing in this case unreasonable, unsound, or imprudent." (Docket 17-2 at 57.) Magistrate Judge VanDevort found that the Fayette County Circuit Court's decision was based on a correct application of the *Strickland* standard and that Petitioner's contention did not "overcome the

presumption that [trial counsel's] decision to elicit testimony from [Mr.] Boggess about his sexual orientation was based on sound trial strategy." (Docket 29 at 12.)

Petitioner claims that the recommendation in the PF&R was based on a finding that trial counsel raised the issue of homosexuality in response to the state putting the issue before the jury. Petitioner points out that the West Virginia Supreme Court of Appeals made a finding that the State did not raise the issue. Contrary to Petitioner's assertion, the PF&R does not claim the state raised the issue of Mr. Boggess and Petitioner's alleged sexual relationship. Rather, the PF&R correctly recognizes that the state court below found that trial counsel made a reasonable decision that there may have been thoughts "lingering in the mind of the jury concerning Flippo's relationship with Boggess." (Docket 29 at 13 (citing Docket 17, Ex. 2 at 57).) The Court **FINDS** that the magistrate judge's recommendation was not based on factual error. In addition, the Court **FINDS** that Petitioner has not overcome the presumption that trail counsel's cross-examination of Mr. Boggess was reasonable and based on sound trial strategy. Accordingly, Petitioner's third objection is **OVERRULED**.

      *D.     Objection to No Evidentiary Hearing*

Petitioner claims,

> The Recommendation was also incorrect in advocating dismissal of all counts without an evidentiary hearing. Once it becomes clear that defense counsel, not the prosecutor opened the floodgates to testimony accusing Mr. Flippo of homosexuality, a hearing is essential to determine whether there might have been any justification for that action, and to determine whether the prejudice prong of Strickland was met. Similarly, a hearing was necessary on the junk science and *Napue/Giglio* claims, so the court can hear evidence on both sides as to whether the evidence was false, and whether the prosecutor either knew or should have known it was false.

(Docket 30 at 5.)

"In cases where an applicant for federal habeas relief is not barred from obtaining an evidentiary hearing by 28 U.S.C. § 2254(e)(2)[11], the decision to grant such a hearing rests in the discretion of the district court." *Schriro v. Landrigan*, 550 U.S. 465, 468 (2007). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief. . . . It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Id.* at 474. "An evidentiary hearing is not required on issues that can be resolved by reference to the state court record." *Id.* (quoting *Totten v. Merkle*, 137 F.3d 1172, 1176 (9th Cir. 1998)).

As stated above, the state court record indicates that Petitioner's trial counsel's cross-examination of Mr. Boggess was reasonable and based on sound trial strategy. Thus, an evidentiary hearing can shed no further light on this matter. Also, as stated above, Petitioner did not develop his "junk science" claim in State Court and, therefore, under 28 U.S.C. § 2254(e)(2), this Court may not grant a evidentiary hearing on that claim. Finally, as previously discussed, Petitioner has given no indication that any evidence he might present could support his claim that Dr. Sopher testified falsely, much less that the prosecutor knew or should have known the testimony to be false. As such, an evidentiary hearing would not be beneficial to the resolution of these issues. Therefore, the Court **FINDS** that the issues presented in Petitioner's objections can be resolved by reference to the state court record, and even with an evidentiary hearing, Petitioner could not develop a factual

---

[11] 28 U.S.C. § 2254(e)(2) "prohibits federal habeas courts from granting evidentiary hearings when applicants have failed to develop the factual bases for their claims in state courts." *Schriro*, 550 U.S. at 474.

record that would entitle him to habeas relief. Accordingly, Petitioner's last objection is **OVERRULED**.

### *IV. CONCLUSION*

For the reasons stated above, the Court **ADOPTS** the recommendation contained in the PF&R [Docket 29], **DENIES** Petitioner's Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 [Docket 2], **GRANTS** Respondent's Motion to Dismiss and Motion for Summary Judgment [Docket 23], and **REMOVES** this matter from the Court's docket. A separate Judgment Order will enter this day implementing the rulings contained herein.

**IT IS SO ORDERED.**

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: May 29, 2009

_____
THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE